IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CT-3211-FL

| | | |
|---|---|---|
| TRACEY TERRELL GRADY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| WYATT MCPHEARSON, | ) | |
| CHRISTOPHER BECK, TERESA GORE, | ) | |
| | ) | |
| Defendants.[1] | ) | |

This matter is before the court on the parties' cross-motions for summary judgment (DE 35, 41) pursuant to Federal Rule of Civil Procedure 56. The motions were briefed fully, and the issues raised are ripe for decision. For the reasons that follow, the court grants defendants' motion and denies plaintiff's motion.

## STATEMENT OF THE CASE

On September 1, 2017, plaintiff, a former state inmate proceeding pro se, commenced this action asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. With the court's leave, on September 5, 2018, plaintiff filed the operative amended complaint alleging that defendants Sergeant Christopher Beck ("Beck"), a corrections officer at the Tabor Correctional Institution ("Tabor C.I."), and Teresa Gore ("Gore"), a lead nurse with North Carolina Department of Public Safety, were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff also alleges that

---

[1] The court constructively amends the caption of this order to reflect dismissal of plaintiff's claims against former defendants Seargent Yeo, Officer Buck, Officer Locklear, and Tina Burkett on January 3, 2019.

defendant Officer McPherson ("McPherson"), a corrections officer at the Tabor C.I., violated his rights under the Eighth and Fourteenth Amendments by sexually assaulting him.

On January 3, 2019, the court conducted its frivolity review of the amended complaint and allowed plaintiff's action to proceed as to the claims described above. The court dismissed plaintiff's claims for injunctive relief, verbal abuse, violations of due process, supervisory liability, retaliation, and assault by another inmate, resulting in dismissal of former defendants Seargent Yeo, Officer Buck, Officer Locklear, and Tina Burkett.

Following a period of discovery, on March 10, 2020, the defendants filed the instant motion for summary judgment relying upon a memorandum of law, statement of material facts, and appendix, comprising affidavits from each defendant and supporting exhibits comprising operating procedures and disciplinary reports. On March 27, 2020, plaintiff filed the instant cross-motion for summary judgment, relying upon a memorandum of law, statement of material facts, and appendix, including plaintiff's affidavit and supporting exhibits.[2] On April 13, 2020, defendants filed a response in opposition of plaintiff's cross-motion for summary judgment.

## STATEMENT OF FACTS

The facts, viewed in the light most favorable to plaintiff,[3] may be summarized as follows. On March 28, 2017, plaintiff was transferred to Tabor C.I.'s minimum-security unit. (Beck Aff. (DE 40-1) ¶¶ 4, 6). Defendant Beck was the administrative receiving sergeant supervising searches in the receiving area of Tabor C.I. when plaintiff arrived. (Id. ¶¶ 4, 6). During intake,

---

[2] Although plaintiff filed his motion for summary judgment outside the dispositive motion deadline, neither party is prejudiced by construing the motion as timely. Thus, the court will address the motion on the merits.

[3] Although the parties have cross moved for summary judgment, the court recounts the facts in the light most favorable to plaintiff where the court determines summary judgment is warranted in favor of defendants, and where plaintiff's motion is not supported and without merit, as set forth in more detail herein.

2

defendant Beck searched plaintiff's personal property as part of a routine search and confiscated his medications and medical equipment, including a knee brace and cane. (Compl. (DE 1) at 4;[4] Compl. Attach. (DE 1-1) at 5; Beck Aff. (DE 40-1) ¶ 8; Gore Aff. (DE 40-4) ¶ 5; Pl.'s Statement of Facts (DE 43) ¶ 2; Pl.'s App. Exs. (DE 44-2) at 2).[5]

Defendant Gore was working as a lead nurse on the minimum-security unit at Tabor C.I. during the relevant time period. (Gore Aff. (DE 40-4) ¶ 3,4). As one of her duties, defendant Gore reviewed medications and medical equipment confiscated from inmates upon arrival at Tabor C.I. or as a result of other routine searches. (Id. ¶ 4). Defendant Gore then reviewed inmates' medical records and compared them to the medication or medical equipment to ensure that the inmate had the requisite prescription or other order from a medical provider. (Id.).

On March 29, 2017, defendant Gore met with plaintiff and allegedly withheld all medication and medical equipment from him, which had previously been confiscated from him upon entry to Tabor C.I. (Compl. Attach. (DE 1-1) at 12; Gore Aff. (DE 40-4) ¶ 7). Plaintiff tried to explain to Tabor C.I. staff that he had received at least some of the medication and equipment from previous healthcare providers. (Compl. (DE 1-1) at 12). Plaintiff's medical equipment included a wooden case, four ACE wraps, one extra knee brace, and one back brace.

---

[4] The original complaint is verified and thus properly considered on motion for summary judgment. Plaintiff's amended complaint is unverified and thus is not competent summary judgment evidence. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) ("[W]hen one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion. However, a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.") (citations omitted). The court previously notified plaintiff that his response to the motion for summary judgment must include verified evidence such as affidavits, declarations, or similar admissible evidence. (See Roseboro Notice (DE 39)).

[5] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

(Gore Aff. (DE 40-4) ¶ 5). Plaintiff also had a large amount of medication in excess of that permitted to inmates and medication that was unlabeled or expired. (Id.).

On September 26, 2017, plaintiff fell, landing on his knees, and plaintiff reported to the nurse's station for pain in his back two days later. (Pl.'s App. Exs. (DE 44-2) at 10; see also Pl.'s Statement of Facts (DE 43) ¶ 20). The examining nurse observed the following:

> Inmate ambulated from restrictive housing to medical with a steady gait. Inmate bending over to remove socks without difficulty. Inmate moved from chair to table without any difficulty. Inmate rolled over on stomach on exam table without any difficulty. Bilateral pedal pulses present/cap refill < 3 secs. This nurse advised inmate to continue with Tylenol, analgesic cream, and warm compress to back.

(Pl.'s App. Exs. (DE 44-2) at 13).

Defendant McPherson worked at Tabor C.I. as the kitchen security officer during the relevant timeframe. (McPherson Aff. (DE 40-7) ¶ 3; see also Pl.'s Statement of Facts (DE 43) ¶ 47). As part of his duties, defendant McPherson was required to conduct a complete search of all inmates working in the kitchen before and after an inmate's shift to ensure no extra food or utensils left the kitchen. (McPherson Aff. (DE 40-7) ¶ 4). The searches were conducted in the kitchen change out room. (Id.).

On August 9, 2017, plaintiff was late reporting to his job in the kitchen because he lost the key to his locker. (Compl. Attach. (DE 1-1) at 15). According to plaintiff, defendant McPherson made him wear a kitchen uniform that was too tight, because defendant McPherson wanted to see the shape of his body in clothes that were too small. (Compl. (DE 1) at 4, 7). In addition, plaintiff alleges that McPherson made "sexually perverted jokes." (Id. at 4).

# DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).  "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor."  Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the

party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B. Defendants' Motion for Summary Judgment

1. Deliberate Indifference Claims

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted). The first prong is objective – the prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (internal quotation omitted). In the medical context, a basic human need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

The second prong is subjective – the prisoner must show that "subjectively the officials acted with a sufficiently culpable state of mind." Strickler, 989 F.2d at 1379 (internal quotations omitted). The mental state for "deliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). "It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995); see Farmer, 511 U.S. at 837. A plaintiff therefore must establish the prison official's "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (citing Farmer, 511 U.S. at 837–39). The subjective knowledge requirement can be proved "through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge . . . ." Scinto v. Stansberry, 841 F.3d 219, 225–26 (4th Cir. 2016).

Deliberate indifference is thus "a particularly high bar to recovery." Iko, 535 F.3d at 241. For claims involving medical care, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Negligence or medical malpractice in diagnosis or treatment are not exceptional circumstances. See id.; see also Estelle v. Gamble, 429 U.S. 97, 105–08 (1976).

7

Here, plaintiff has not established a genuine issue of material fact with respect to his Eighth Amendment deliberate indifference claims. As to the objective prong, plaintiff presents no verified evidence that he suffers from a serious medical need requiring treatment. Plaintiff suggests in briefing that because he did not have his medication or medical equipment, he injured himself in a fall. However, the only evidence identified by plaintiff that conceivably is relevant to this argument is a record of a medical appointment dated September 28, 2017, (six months after plaintiff's medications and equipment allegedly were confiscated), which states as follows:

> Inmate ambulated from restrictive housing to medical with a steady gait. Inmate bending over to remove socks without difficulty. Inmate moved from chair to table without any difficulty. Inmate rolled over on stomach on exam table without any difficulty. Bilateral pedal pulses present/cap refill < 3 secs. This nurse advised inmate to continue with Tylenol, analgesic cream, and warm compress to back.

(Pl.'s App. Exs. (DE 44-2) at 13). This medical record is insufficient to establish plaintiff suffered from a serious medical need. See Iko, 535 F.3d at 241 (explaining serious medical need is one that has been diagnosed by a physician as mandating treatment, or that is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention").[6]

Turning to the subjective component, there is no evidence defendants Beck or Gore were deliberately indifferent to plaintiff's medical needs. Other than general statements about a few doctors prescribing him medication and that one provider had given him a cane, there is no evidence that plaintiff presented to defendants valid prescriptions or medical orders for the medications and medical equipment confiscated during intake.

---

[6] To the extent plaintiff is alleging defendants Beck and Gore violated his Eighth Amendment rights by providing inhumane conditions of confinement, this claim also is without merit. For reasons discussed above, plaintiff fails to present evidence that he suffered "a serious or significant physical or emotional injuring resulting from the challenged conditions." De'Lonta v. Angelone, 33 F.3d 630, 634 (4th Cir. 2003) (quotation omitted).

As set forth above, on March 28, 2017, defendant Beck searched plaintiff's possessions to confirm no contraband was present. (Beck Aff. (DE 38-1) ¶ 6-8). He found that plaintiff possessed excessive medication, medication for which he had no prescription, unlabeled medication, and medical equipment for which he had no medical order. (Id. ¶ 8). Defendant Beck confiscated the possibly unauthorized medication and medical equipment, and delivered them to defendant Gore to determine whether anything should be returned to plaintiff. (Id.). There is no evidence defendants Beck or Gore knew plaintiff suffered from serious medical issues that required him to use the medications or equipment, or retain it in his possession. Indeed, the undisputed evidence is defendant Gore did not find prescriptions or other medical orders permitting plaintiff to retain the majority of the medications and equipment. Accordingly, there is no record evidence supporting plaintiff's claim that defendants Beck or Gore were deliberately indifferent to plaintiff's serious medical needs. See Farmer, 511 U.S. at 835 (discussing evidentiary showing necessary to establish Eighth Amendment deliberate indifference claim); Shakka, 71 F.3d at 166 (same).

Furthermore, plaintiff has not shown that the confiscation of his medications and medical equipment was the proximate cause of the injury he sustained in September 2017. The undisputed evidence also establishes that defendant Gore returned to plaintiff certain medications and equipment that he was prescribed and allowed to retain in his possession. (Gore Aff. (DE 40-4) ¶ 6; Pl.'s App. Exs. (44-2) at 4). If plaintiff believed that the medications or equipment were medically necessary, he was free to submit sick call requests to Tabor C.I. providers and obtain new prescriptions or orders. (Gore Aff. (DE 40-4) ¶ 7). To the extent plaintiff was unable to obtain renewals of his prescriptions from Tabor C.I. medical providers, causing further medical

problems, plaintiff fails to establish that defendants Beck or Gore were personally responsible for same. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Plaintiff also does not establish that he suffered any injury (or a substantial risk of serious injury) between the time defendants Beck and Gore confiscated his medications and equipment, and the time when he was medically evaluated by Tabor C.I. staff. See, e.g., Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018) ("Where a deliberate indifference claim is predicated on a delay in medical care, [the Fourth Circuit has] ruled that there is no Eighth Amendment violation unless 'the delay results in come substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'"); Sharpe v. S.C. Dep't of Corr., 621 F. App'x 732, 734 (4th Cir. 2015).

In sum, plaintiff has not established a genuine issue of material fact precluding summary judgment on his Eighth Amendment deliberate indifference claim. Accordingly, the court grants defendants' motion for summary judgment as to such claim.

2.  Sexual Assault Claim

The Eighth Amendment also protects against the sexual abuse of inmates. See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (holding Eighth Amendment protects inmates from violent assaults); Jackson v. Holley, 666 F. App'x 242, 244 (4th Cir. 2016). Thus, the same two-prong standard stated above for claims of Eighth Amendment violations applies to sexual assault of prisoners by prison staff.

Plaintiff presents only conclusory statements and no verified evidence that he was the victim of a sexual assault. For example, he asserts McPherson sexually assaulted him by touching him inappropriately and sexually harassed him by making sexually perverted jokes. (Compl. (DE

10

1-1) at 4, 7; Am. Compl. (DE 16) at 7). These conclusory statements are insufficient to establish a claim based upon sexual assault. See Evans Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) (explaining "unsubstantiated allegations and bald assertions" cannot defeat a motion for summary judgment); Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, 53 F.3d 55, 62 (4th Cir. 1995) ("The building of one inference upon another will not create a genuine issue of material fact. Mere unsupported speculation . . . is not enough to defeat a summary judgment motion.").

The only verified evidence concerning conduct of defendant McPherson is plaintiff's verified allegations that McPherson made lewd sexual jokes. However, as determined upon frivolity review, these allegations are insufficient to support a claim based upon the Eighth Amendment or Fourteenth Amendment premised upon sexual assault. See Wilson v. McKeller, 254 F. App'x 960, 961 (4th Cir. 2007) ([M]ere threats or verbal abuse, without more, do not state a cognizable claim under §1983."); Jackson v. Holley, 666 F. App'x 242, 244 (4th Cir. 2016) ("'Although prisoners have a right to be free from sexual abuse, whether as the hands of fellow inmates or prison guards, the Eighth Amendment's protections do not necessarily extend to mere verbal sexual assault.'" (quoting Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004))).

Plaintiff has failed to establish a genuine issue of material fact precluding summary judgment on his sexual assault claim. Accordingly, the court grants defendants' motion for summary judgment (DE 35).

C.  Plaintiff's Motion for Summary Judgment

Because the court has determined that, based on facts in the light most favorable to plaintiff, he has failed to establish a genuine issue of material fact precluding summary judgment on his claims, plaintiff's motion for summary judgment must fail. Accordingly, the court denies

11

plaintiff's motion for summary judgment (DE 41).

## CONCLUSION

Based on the foregoing, the court GRANTS defendants' motion for summary judgment (DE 35) and DENIES plaintiff's motion for summary judgment (DE 41). The clerk is DIRECTED to close this case.

SO ORDERED, this the 30th day of September, 2020.

                                           LOUISE W. FLANAGAN
                                           United States District Judge